# STATE OF MICHIGAN

# COURT OF APPEALS

TRINITY HEALTH-WARDE LAB, LLC,

Petitioner-Appellee,

v

CHARTER TOWNSHIP OF PITTSFIELD,

Respondent-Appellant.

FOR PUBLICATION
November 3, 2016
9:00 a.m.

No. 328092
Michigan Tax Tribunal
LC No. 00-455553

Before: RONAYNE KRAUSE, P.J., and O'CONNELL and GLEICHER, JJ.

O'CONNELL, J.

Respondent, Charter Township of Pittsfield (the Township) appeals as of right the Michigan Tax Tribunal's order granting a charitable institution exemption to petitioner, Trinity Health-Warde Lab, LLC (the Lab), because the Lab is wholly owned by a charitable institution even though it is organized as a for-profit institution. We reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to Craig Killingbeck, vice president of lab services for Trinity Health Michigan (Trinity), the Lab is a wholly owned subsidiary of Trinity. Trinity appoints the Lab's board of directors, who manage the Lab's business and affairs. Trinity created the Lab for the purpose of acquiring, owning, and operating the Lab's real property, a 57,000 square foot building used solely as a medical laboratory. Trinity and other nonprofit hospitals use the Lab's facilities under a co-tenancy laboratory agreement.[1]

In May 2013, the Lab filed a petition with the Tax Tribunal alleging its real property was exempt from taxation. The Township responded that the property was not eligible for tax-exempt status because the Lab is a for-profit entity. The Lab moved for summary disposition under MCR 2.116(C)(10), asserting that Trinity has complete corporate control of the Lab and

---

[1] The equipment within the laboratory is exempt from taxation under MCL 211.7o because Trinity and other nonprofit charitable institutions own the equipment. *Mich Co-Tenancy Laboratory v Pittsfield Charter Twp*, unpublished opinion per curiam of the Court of Appeals, issued Nov 14, 2013 (Docket No. 310376), p 7.

because Trinity is a charitable institution under MCL 211.7o, the Lab is also a charitable institution. The Township responded that summary disposition was inappropriate because the Lab, as a for-profit entity, does not meet several of the requirements of a charitable institution.

The Tribunal granted summary disposition to the Lab. The Tribunal concluded that Trinity so dominated the Lab's management and operation that it was proper to ignore the Lab's separate corporate entity. Concluding that the Lab and Trinity were essentially the same entity, the Tribunal determined that the Lab was entitled to tax-exempt status under MCL 211.7o. The Township now appeals.

## II. STANDARD OF REVIEW

This Court's review of a decision by the Tax Tribunal is limited. *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 527; 817 NW2d 548 (2012). When a party does not dispute the facts or allege fraud, we review whether the Tribunal "made an error of law or adopted a wrong principle." *Id*. at 527-528. This Court reviews de novo the interpretation and application of tax statutes. *Id*. at 528. We construe exemption statutes in favor of the taxing authority. *Inter Coop Council v Dep't of Treasury*, 257 Mich App 219, 222; 668 NW2d 181 (2003). If an exemption exists, statutory construction may not enlarge it. *Menard Inc v Dep't of Treasury*, 302 Mich App 467, 475; 838 NW2d 736 (2013).

## III. ANALYSIS

The Township argues that the Tribunal made an error of law when it concluded that, because Trinity wholly owns the Lab, the Lab was entitled to a charitable institution exemption even though it did not meet the exemption's requirements. We agree.

The General Property Tax Act (the Act) provides that "all property, real and personal, within the jurisdiction of this state, not expressly exempted, shall be subject to taxation." MCL 211.1. The petitioner bears the burden of proving it is entitled to an exemption. *ProMed Healthcare v Kalamazoo*, 249 Mich App 490, 492-493; 644 NW2d 47 (2002).

MCL 211.7r provides an exemption for real property owned or operated by nonprofit trusts used for hospital or other public health purposes:

> The real estate and building of a clinic erected, financed, occupied, and operated by a nonprofit corporation or by the trustees of health and welfare funds is exempt from taxation under this act, if the funds of the corporation or the trustees are derived solely from payments and contributions under the terms of collective bargaining agreements between employers and representatives of employees for whose use the clinic is maintained. The real estate with the buildings and other property located on the real estate on that acreage, owned and occupied by a nonprofit trust and used for hospital or public health purposes is exempt from taxation under this act . . . .

And MCL 211.7o(1) provides an exemption for property owned by a charitable institution:

> Real or personal property owned and occupied by a nonprofit charitable institution while occupied by that nonprofit charitable institution solely for the purposes for which that nonprofit charitable institution was incorporated is exempt from the collection of taxes under this act.

"A charitable institution must be a nonprofit institution." *Wexford Med Group v City of Cadillac*, 474 Mich 192, 215; 713 NW2d 734 (2006) (internal quotation marks omitted).

The plain language of these statutes precludes the Lab from claiming a property tax exemption because the Lab is a for-profit limited liability company. Accordingly, it is neither a nonprofit trust under MCR 211.7r nor owned or occupied by a nonprofit charitable institution under MCR 211.7o.

However, the Tribunal concluded that because the Lab is a wholly owned subsidiary of Trinity—which is a nonprofit charitable institution—it was proper to extend Trinity's exempt status to the Lab. In doing so, the Tribunal relied on case law from this Court and the Michigan Supreme Court. Reviewing the case law, we conclude that the Tribunal's reliance was misplaced.

In *Ann Arbor v The Univ Cellar, Inc*, 401 Mich 279; 258 NW2d 1 (1977), the Michigan Supreme Court considered whether a tax-exempt university could extend its tax-exempt status to a related nonprofit bookstore. *Id*. at 284. The Court concluded that the Legislature would only have intended to permit such an extension with retention of managerial and operational control of the nonexempt corporation. *Id*. at 293-294. In that case, the exempt organization did not control the nonexempt organization, and so it was not entitled to a property tax exemption. *Id*. at 286-287.

However, this decision does not establish that a subsidiary corporation is, in fact, entitled to a tax exemption when it is a non-exempt organization and the parent company is exempt. The Supreme Court specifically did not decide "whether a tax exempt organization may extend its exemption to a separate corporation, albeit one organized to carry out the exempt purpose." *Id*. at 285. Our Supreme Court explicitly assumed without deciding that the Legislature intended to permit an exempt organization to extend its exemption to a nonexempt organization. *Ann Arbor*, 401 Mich at 293. However, the *Ann Arbor* Court expressed caution on that issue:

> To disregard the corporate entity and treat the Cellar as the alter ego of the University for tax exemption purposes, and yet regard it as a separate entity for purposes of determining whether the University is subject to liability to unpaid suppliers or to customers who are injured on the premises or by defective products would be to run with the hare and hunt with the hounds. [*Ann Arbor*, 401 Mich at 291-292.]

It is axiomatic that a court is not bound on a point of law that a previous court did not actually consider or decide. *Andrews v Booth*, 148 Mich 333, 335; 111 NW 1059 (1907). The *Ann Arbor* Court expressly declined to decide that question, and we conclude that the Tribunal made an error of law in concluding that *Ann Arbor* stood for the proposition that a tax-exempt parent corporation could extend its tax-exempt status to a related entity.

The Tribunal also relied on *Nat'l Music Camp v Green Lake Twp*, 76 Mich App 608; 257 NW2d 188 (1977). In *Nat'l Music Camp*, the tribunal denied tax exempt status to the property at issue because the petitioner, which owned the property, did not exclusively use the property. *Id*. at 613. Petitioner and the related entity were two of four separate tax-exempt corporate entities that formed the Interlochen Educational Complex. *Id*. at 609. Petitioner used the property during the school year, while another related entity used the property in the summer. *Id*. at 610. This Court concluded that because the four educational corporations were one corporation for all practical purposes, the Tribunal should grant tax-exempt status. *Id*. at 614-615.

*Nat'l Music Camp* is distinguishable because the corporations in that case were all tax-exempt. In this case, the Lab is not a tax-exempt corporation. Accordingly, *Nat'l Music Camp* does not apply.

We conclude that the Tribunal adopted a wrong principle when it allowed the Lab to utilize the tax-exempt status of its parent corporation when it is not itself a nonprofit entity. The Lab does not meet the statutory requirements for exemption under MCL 211.7r or MCL 211.7o and case law does not provide that a for-profit entity may use a nonprofit parent-corporation's tax-exempt status. Allowing it to do so is contrary to the plain language of the statutes, which require the property to be owned by the nonprofit organization seeking exemption.

We reverse and remand. No costs because the case involves an issue of public significance. MCR 7.219(A). We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Amy Ronayne Krause
/s/ Elizabeth L.Gleicher